**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE, | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:18-cv-01963-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA; PETRÓLEOS DE VENEZUELA, S.A., | |
| *Defendants*. | |

**MEMORANDUM OF LAW OF THE BOLIVARIAN REPUBLIC OF VENEZUELA**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**
**AND MOTION OF THE BOLIVARIAN REPUBLIC OF VENEZUELA**
**TO VACATE DEFAULT**

Of Counsel:

Kent A. Yalowitz*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
T: (212) 836-8000
F: (212) 836-8689
Kent.yalowitz@arnoldporter.com

E. Whitney Debevoise*
Sally L. Pei*
Stephen K. Wirth*
Avishai D. Don*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999
Whitney.debevoise@arnoldporter.com
Sally.pei@arnoldporter.com
Stephen.wirth@arnoldporter.com
Avishai.don@arnoldporter.com

*motions for pro hac vice admission pending

Dated:  August 7, 2019

A. Thompson Bayliss (#4379)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com

*Counsel for the Bolivarian Republic of
Venezuela*

ii

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

NATURE AND STAGE OF PROCEEDINGS ............................................................. 1

STATEMENT OF FACTS ............................................................................................ 2

LEGAL BACKGROUND ............................................................................................. 4

ARGUMENT ................................................................................................................. 5

I.      THE COURT SHOULD DISMISS OR TRANSFER FOR IMPROPER
        VENUE. .............................................................................................................. 6

II.     NO DEFAULT JUDGMENT SHOULD BE ENTERED BECAUSE
        PLAINTIFF HAS FAILED TO EFFECT SERVICE AND OBTAIN
        PERSONAL JURISDICTION. ........................................................................... 10

        A.      Hague Convention service through a "Central Authority." ................... 12

        B.      Plaintiff's efforts do not constitute complete service under the
                Hague Convention. ................................................................................ 12

        C.      Article 15 of the Hague Convention precludes entry of default
                judgment. ............................................................................................... 14

III.    THE CLERK'S ENTRY OF DEFAULT SHOULD BE VACATED. .................. 17

        A.      Plaintiff will not be prejudiced. ............................................................ 18

        B.      The Republic has meritorious defenses. ............................................... 18

        C.      The Republic's default was not the result of culpable conduct. ............ 19

CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altmann v. Republic of Austria*,
  317 F.3d 954 (9th Cir. 2002) ..................................................................9

*Aly v. Hanzada for Imp. & Exp. Co.*,
  2014 WL 2829513 (W.D. Mo. June 23, 2014) ...........................................16, 17

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989)...........................................................................5, 10

*Aro Manufacturing Co., Inc. v. Automobile Body Research Corp.*,
  352 F.2d 400 (1st Cir. 1965)..................................................................8

*Calvert v. Huckins*,
  875 F. Supp. 674 (E.D. Cal. 1995)...........................................................8

*Cannon Mfg. Co. v. Cudahy Co.*,
  267 U.S. 333 (1925)...........................................................................8

*Cavic v. Republic of Serbia*,
  2018 WL 6038346 (C.D. Cal. Mar. 21, 2018)...........................................13

*Commissions Imp. Exp. S.A. v. Republic of the Congo*,
  2012 WL 1468486 (S.D.N.Y. Apr. 27, 2012)...........................................7

*Compania Mexicana Refinadora Island S.A. v. Compania Metropolitana de Oleoductos, S.A.*
  164 N.E. 907 (1928)...........................................................................8

*Coombs v. Iorio*,
  2008 WL 4104529 (E.D. Okla. Aug. 28, 2008)........................................17

*Corporacion Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploracion y Produccion*,
  832 F.3d 92 (2d Cir. 2016)....................................................................9

*Crystallex v. Republic of Venezuela*,
  2019 WL 3403888 (3d Cir. July 29, 2019)...............................................3

*Dambach v. United States*,
  211 F. App'x 105 (3d Cir. 2006) ............................................................18, 19

*Devengoechea v. Bolivarian Republic of Venezuela*,
  2014 WL 12489848 (S.D. Fla. Apr. 25, 2014) .........................................13

*Escude Cruz v. Ortho Pharmaceutical Corp.*,
   619 F.2d 902 (1st Cir. 1980).................................................................8

*Farnese v. Bagnasco*,
   687 F.2d 761 (3d Cir. 1982)................................................................17

*Feliciano v. Reliant Tooling Co.*,
   691 F.2d 653 (3d Cir. 1982)................................................................18

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*,
   447 F.3d 835 (D.C. Cir. 2006)............................................................17

*Gold Kist, Inc. v. Laurinburg Oil Co.*,
   756 F.2d 14 (3d Cir. 1985).............................................................10, 18

*Gross v. Stereo Component Sys., Inc.*,
   700 F.2d 120 (1983)............................................................................19

*Guaranty Trust Co. v. United States*,
   304 U.S. 126 (1938)............................................................................16

*Havensight Capital LLC v. People's Republic of China*,
   2015 WL 12778414 (C.D. Cal. Apr. 30, 2015) ...................................9

*Jiménez v. Palacios*,
   No. 2019-0490-KSJM, 2019 Del. Ch. LEXIS 288 (Del. Ch. Aug. 2, 2019).....................3, 16

*Johnson Creative Arts, Inc. v. Wool Masters, Inc.*,
   743 F.2d 947 (1st Cir. 1984)................................................................7

*Kiobel v. Royal Dutch Petroleum Co.*,
   569 U.S. 108 (2013)............................................................................16

*Kumar v. Republic of Sudan*,
   880 F.3d 144 (4th Cir. 2018) .............................................................11

*Mackenzie v. Hare*,
   239 U.S. 299 (1915)............................................................................16

*Marschauser v. Travelers Indem. Co.*,
   145 F.R.D. 605 (S.D. Fla. 1992).........................................................13

*Mezerhane v. República Bolivariana De Venezuela*,
   2013 WL 12091160 (S.D. Fla. Mar. 19, 2013)...................................14

*Micula v. Gov't of Romania*,
   714 F. App'x 18 (2d Cir. 2017) ....................................................6, 7, 9

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
  863 F.3d 96 (2d Cir. 2017)....................................................................................... *passim*

*People's Tobacco Co. v. Am. Tobacco Co.*,
  246 U.S. 79 (1918)....................................................................................................8

*Pfizer, Inc. v. Gov't of India*,
  434 U.S. 308 (1978)..................................................................................................16

*Price v. Socialist People's Libyan Arab Jamahiriya*,
  294 F.3d 82 (D.C. Cir. 2002)....................................................................................10

*Republic of Sudan v. Harrison*,
  139 S. Ct. 1048 (2019).............................................................................................11

*Sears, Roebuck and Co. v. Sears PLC*,
  752 F. Supp. 1223 (D. Del. 1990).............................................................................8

*Shirobokova v. CSA Czech Airlines, Inc.*,
  335 F. Supp. 2d 989 (D. Minn. 2004).......................................................................7

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004)..................................................................................................16

*Tozer v. Charles A. Krause Mill. Co.*,
  189 F.2d 242 (3d Cir. 1951)......................................................................................17

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
  30 F.3d 148 (D.C. Cir. 1994).....................................................................................8

*United Merchants and Manufacturers, Inc. v. David & Dash, Inc.*,
  439 F. Supp. 1078 (D. Md. 1977)..............................................................................8

*United States v. $55,518.05 in U.S. Currency*,
  728 F.2d 192 (3d Cir. 1984).................................................................................17, 18

*United States v. Curtiss-Wright Export Corp.*,
  299 U.S. 304 (1936)..................................................................................................16

*Verlinden B.V. v. Cent. Bank of Nigeria*,
  461 U.S. 480 (1983)....................................................................................................4

*Vivadent (USA), Inc. v. Darby Dental Supply Co.*,
  655 F. Supp. 1359 (D.N.J. 1987)...............................................................................7

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988)..................................................................................................14

*Washburn v. Sardi's Restaurants*,
   191 Ga. App. 307 (1989) ................................................................8

*Zazzali v. Swenson*,
   852 F. Supp. 2d 438 (D. Del. 2012)............................................8

*Zivotofsky v. Kerry*,
   135 S. Ct. 2076 (2015)...............................................................16

**Statutes, Rules, and Treaties**

22 U.S.C. § 1650(a) ................................................................1, 9

28 U.S.C.
   § 1330(a) ...................................................................................5
   § 1330(b) ......................................................................5, 10, 11
   § 1391(f) ..................................................................5, 6, 9, 10
   § 1391(f)(1) ........................................................................7, 10
   § 1391(f)(3) .......................................................................7, 8, 9
   § 1391(f)(4) ........................................................................7, 10
   § 1404(a) .................................................................................10
   § 1406(a) .................................................................................10
   § 1602........................................................................................5
   § 1604........................................................................................4
   § 1605(a)(6) ...........................................................................11
   § 1608................................................................................10, 11
   § 1608(a) ..........................................................................5, 10
   § 1608(a)(1) ...........................................................................16
   § 1608(a)(2) .....................................................................11, 13
   § 1608(a)(3) ...........................................................................16
   § 1608(a)(4) ...........................................................................16
   § 1609................................................................................11, 19
   § 1738........................................................................................9

8 Del. Code § 371(b)...................................................................8

Convention on the Settlement of Investment Disputes Between States and
   Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270 ......................1

Federal Rule of Civil Procedure 4(c)(2) ..................................12

Federal Rule of Civil Procedure 55(c) ......................................17

Foreign Sovereign Immunities Act, Pub. L. No. 94-583, 90 Stat. 2891 ................. *passim*

Hague Convention on the Service Abroad of Judicial and Extrajudicial
   Documents in Civil or Commercial Matters, 658 U.N.T.S. 163 ................... *passim*

**Legislative Materials**

H.R. Rep. No. 94-1487 (1976).........................................................................................5

**Other Authorities**

Michelle Bachelet, *Oral Update on the Situation of Human Rights in the Bolivarian Republic of Venezuela*, UNHCR (Mar. 20, 2019) ...................................................3

*Refugees and migrants from Venezuela top 4 million: UNHCR and IOM*, UNHCR, (June 7, 2019) ...........................................................................................4

Ricardo Hausmann, Director of the Center for International Development, Harvard University, *Understanding Venezuela's Collapse*, Harvard Gazette (Feb. 12, 2019)...................................................................................................3

*UN Human Rights Report Documents Maduro Regime's Human Rights Abuses*, U.S. Dep't of State (July 5, 2019)..............................................................................4

U.S. Sec'y of State Mike Pompeo, *U.S. Government Support for the Democratic Aspirations of the Venezuelan People*, U.S. Dep't of State ......................................3

*Venezuela Regional Crisis, Fact Sheet #1*, U.S. Agency for Int'l Dev. (Mar. 1, 2019).................4

*Venezuela Regional Crisis, Fact Sheet #2*, U.S. Agency for Int'l Dev. (Apr. 10, 2019) ..............4

*Venezuela's Humanitarian Emergency*, Human Rights Watch (Apr. 2019)...................................4

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant the Bolivarian Republic of Venezuela (the "Republic") submits this memorandum of law in opposition to Plaintiff Saint-Gobain Performance Plastics Europe's motion for default judgment and in support of its cross-motion to vacate the clerk's entry of default and dismiss the complaint without prejudice or to transfer the case to the United States District Court for the District of Columbia.

Below, we demonstrate the following:

1.  The Court should dismiss or transfer this case because venue is improper in this District.

2.  No default judgment should be entered because Plaintiff has not served the complaint in compliance with the strict requirements of the Foreign Sovereign Immunities Act, and, as a consequence, there is no personal jurisdiction over the Republic at this time.

3.  The clerk's entry of default should be vacated under the lenient standards governing vacatur of such defaults.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff obtained an arbitral award against the Republic under the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270 ("ICSID Convention").  The ICSID tribunal determined that the Republic had breached the bilateral investment treaty between France and Venezuela by expropriating Plaintiff's property without compensation and, on November 3, 2017, issued an award in favor of Plaintiff in the amount of approximately $42 million.  D.I. 1 at 6–7, ¶¶ 21, 24.

Plaintiff then commenced this action asserting two counts: Count One, For Registration of the Award as a Foreign Judgment Pursuant to 22 U.S.C. § 1650(a), and Count Two, For Enforcement of the Award Pursuant to 22 U.S.C. § 1650(a).  D.I. 1 at 8–9, ¶¶ 30–38.  Plaintiff

named two defendants—the Republic, and the Republic's instrumentality, Petróleos de Venezuela, S.A. ("PDVSA"), which was not a party to the ICSID arbitration.  *Id.* at 2, ¶¶ 2–3.

Plaintiff asserts that it effected service on both defendants by transmitting the complaint and summons by courier to the Republic's Foreign Ministry in Caracas, Venezuela.  D.I. 11 at 10–12.  Plaintiff asserts that individuals (who may or may not have been employees of the Foreign Ministry) signed for the summons and complaint on December 21 and December 27, 2018.  Id. at 11 (citing D.I. 9, Exs. 4, 5).

On April 24, 2019, Plaintiff requested that the clerk enter a default because the defendants had "failed to plead or otherwise defend."  D.I. 8.  The clerk entered default as to both defendants on June 12, 2019.  D.I. 10.  Plaintiff then moved for default judgment on June 24, 2019.  D.I. 11.

## STATEMENT OF FACTS

During the regimes of Hugo Chávez and Nicolás Maduro, the Venezuelan economy was systematically destroyed through nationalizations, expropriations, over-indebtedness, and corruption.

On January 10, 2019, the freely and fairly elected Venezuelan National Assembly determined, in accordance with the Venezuelan constitution, that the presidency was vacant because Mr. Maduro had claimed victory in a fraudulent election.  On January 23, National Assembly President Juan Guaidó, supported by the democratically elected National Assembly, assumed the interim Presidency of Venezuela in an effort to restore democracy and constitutional rule.  The United States immediately recognized Mr. Guaidó as the legitimate interim President of Venezuela and rejected the legitimacy of the Maduro regime.[1]

---

[1]    *See* U.S. Sec'y of State Mike Pompeo, *U.S. Government Support for the Democratic Aspirations of the Venezuelan People*, U.S. Dep't of State, https://www.state.gov/u-s-government-support-for-the-democratic-aspirations-of-the-venezuelan-people/#crisis.

Mr. Maduro has nevertheless refused to relinquish his position, and he has refused to surrender control of organs such as the Ministry of Foreign Affairs or the Ministry of Justice. Under U.S. law, however, the Maduro government is not recognized by the courts—only the Guaidó government and the National Assembly are so recognized. *See Rusoro Mining Limited v. Bolivarian Republic of Venezuela*, No. 18-7044, Order (D.C. Cir. May 1, 2019); *see also Crystallex v. Republic of Venezuela*, 2019 WL 3403888, at *4 n.2 (3d Cir. July 29, 2019); *Jiménez v. Palacios*, No. 2019-0490-KSJM, 2019 Del. Ch. LEXIS 288, at *21-22 (Del. Ch. Aug. 2, 2019).

In addition to contending with a constitutional crisis, the Guaidó government and the National Assembly face an unprecedented economic and social crisis in Venezuela. The policies of former presidents Maduro and Chávez, combined with rampant corruption, destroyed Venezuela's infrastructure and domestic production capacity, leading to "the biggest economic collapse in human history outside of war or state collapse."[2] Venezuela's gross domestic product has fallen nearly 50% in the last five years—much more than the United States' drop during the Great Depression.[3] According to the United Nations High Commissioner for Human Rights (UNHCHR), more than 4 million people have fled Venezuela "[a]s a direct result of this far-reaching human rights crisis."[4]

---

[2]    Ricardo Hausmann, Director of the Center for International Development, Harvard University, *Understanding Venezuela's Collapse*, Harvard Gazette (Feb. 12, 2019), https://news.harvard.edu/gazette/story/2019/02/harvard-expert-tries-to-make-sense-of-venezuelas-collapse/.

[3]    *Id.*

[4]    Michelle Bachelet, *Oral Update on the Situation of Human Rights in the Bolivarian Republic of Venezuela*, UNHCR (Mar. 20, 2019), https://www.ohchr.org/en/NewsEvents/Pages/DisplayNews.aspx?NewsID=24374 ("UNHCR Oral Statement"); *Refugees and migrants from Venezuela top 4 million: UNHCR and IOM*, UNHCR, (June 7, 2019), https://www.unhcr.org/news/press/2019/6/5cfa2a4a4/refugees-migrants-venezuela-top-4-million-unhcr-iom.html.

For those remaining, life is grim.  Many lack access to clean water.[5]  Eight out of ten

households lack a reliable source of food.[6]  Eighty percent can no longer afford basic healthcare.[7]

Nearly 70% of Venezuela's hospitals report intermittent power outages and a lack of potable

water.[8]  Venezuela now experiences routine outbreaks of vaccine-preventable diseases that had

previously been eradicated.[9]  More than one million children no longer attend school.  UNHCR

Oral Statement.  The crisis has been further exacerbated by rolling blackouts.[10]  The United States

has also expressed "deep[] concern[]" about "gross human rights abuses and violations" occurring

in Venezuela.[11]

## LEGAL BACKGROUND

In 1976, Congress enacted the Foreign Sovereign Immunities Act ("FSIA"), Pub. L. No.

94-583, 90 Stat. 2891, creating a "comprehensive set of legal standards governing claims of

immunity in every civil action against a foreign state or its political subdivisions, agencies, or

instrumentalities."  *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983).

---

[5]      *Venezuela Regional Crisis*, *Fact Sheet #2* at 5, U.S. Agency for Int'l Dev. (Apr. 10, 2019),   https://www.usaid.gov/sites/default/files/documents/1866/04.10.19_-_USG_Venezuela_Regional_Crisis_Fact_Sheet_2.pdf ("USAID Fact Sheet #2).

[6]      *Venezuela's Humanitarian Emergency* 26, Human Rights Watch (Apr. 2019), https://www.hrw.org/sites/default/files/report_pdf/venezuela0419_web.pdf ("HRW Report").

[7]      *Venezuela Regional Crisis*, *Fact Sheet #1* at 6, U.S. Agency for Int'l Dev. (Mar. 1, 2019),      https://www.usaid.gov/sites/default/files/documents/1866/venezuela_regional_crisis_fs01_03-01-2019.pdf.

[8]      *Id.*

[9]      HRW Report at 20.

[10]      USAID Fact Sheet #2 at 1.

[11]      *UN Human Rights Report Documents Maduro Regime's Human Rights Abuses*, U.S. Dep't of State (July 5, 2019), https://www.state.gov/un-human-rights-report-documents-maduro-regimes-human-rights-abuses.

Under the FSIA, foreign states and their agencies and instrumentalities have immunity from suit, *see* 28 U.S.C. § 1604, other than from "claim[s] for relief in personam with respect to which the foreign state is not entitled to immunity" either under one of the exceptions to immunity enumerated in §§ 1605–1607 or under an applicable international agreement. *Id.* § 1330(a). The FSIA expressly superseded all existing state and federal grants of jurisdiction over foreign sovereigns. 28 U.S.C. § 1602; *see Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434–35 (1989); H.R. Rep. No. 94-1487, at 12 (1976).

The FSIA also eliminated *in rem* jurisdiction in suits against sovereigns because Congress concluded that such jurisdiction created "serious friction in United States' foreign relations." H.R. Rep. No. 94-1487, at 27.

Finally, the FSIA imposes strict service-of-process requirements, compliance with which is the exclusive means of obtaining personal jurisdiction over sovereigns. 28 U.S.C. §§ 1330(b), 1608; *see Amerada Hess*, 488 U.S. at 435 n.3.

This regime applies to actions seeking recognition of ICSID awards. As the Second Circuit has explained,

> ICSID award-creditors must pursue federal court judgments to enforce their awards against a foreign sovereign by filing a federal action on the award against the sovereign, serving the sovereign with process in compliance with the FSIA, and meeting the FSIA's venue requirements before seeking entry of a federal judgment, whether through a motion for judgment on the pleadings or for summary judgment.

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100 (2d Cir. 2017).

## ARGUMENT

Plaintiff has not followed the FSIA's procedural mandates. Venue is improper in this District because no acts, omissions, parties, or property connect Plaintiff's ICSID award to the District of Delaware, *see* 28 U.S.C. § 1391(f). And there is no personal jurisdiction over the Republic because service has not been effected in compliance with 28 U.S.C. § 1608(a). As a

consequence, the Court should deny the motion to enter a default judgment, vacate the clerk's default, and dismiss the complaint or transfer the case to the United States District Court for the District of Columbia.

## I.      **THE COURT SHOULD DISMISS OR TRANSFER FOR IMPROPER VENUE.**

Venue in this District is improper under the FSIA because the arbitral award at issue has no connection to the district. *See* 28 U.S.C. § 1391(f). Accordingly, the Court should dismiss this case without prejudice or transfer it to the United States District Court for the District of Columbia—the only court where venue is proper. The FSIA's venue provision provides:

> Civil Actions Against a Foreign State.—A civil action against a foreign state as defined in section 1603(a) of this title may be brought—
>
> > (1)  in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;
> >
> > (2)  in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;
> >
> > (3)  in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or
> >
> > (4)  in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

28 U.S.C. § 1391(f).

By operation of this statute, "the FSIA requires a plenary action to be brought in the District of Columbia unless 'a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated,' in another district." *Micula v. Gov't of Romania*, 714 F. App'x 18, 21 (2d Cir. 2017) (quoting 28 U.S.C. § 1391(f)(1)).

According to the complaint, Plaintiff's ICSID award arises out of the Chavez regime's "expropriation of Saint-Gobain's 99.99% interest in NorPro Venezuela C.A., a company which manufactured ceramic proppants used during fracking to keep induced hydraulic fractures 'propped' open."  D.I. 1 at 5, ¶ 16; *see also* D.I. 3, Ex. 3 ("Decision on Liability").  NorPro is "a corporation organized and existing under the laws of Venezuela."  Decision on Liability ¶ 136. All of the conduct at issue occurred entirely in Venezuela, and all of the property at issue is located in Venezuela.  *See id.* ¶¶ 134–264.  No acts, omissions, parties, or property connect Plaintiff's ICSID award to the District of Delaware.  Accordingly, venue is proper only in the District of Columbia.  *See* 28 U.S.C. § 1391(f)(4); *Mobil Cerro Negro*, 863 F.3d at 125; *Micula*, 714 F. App'x at 21; *see also Commissions Imp. Exp. S.A. v. Republic of the Congo*, No. 11-cv-6176, 2012 WL 1468486, at *2–3 (S.D.N.Y. Apr. 27, 2012) (holding that § 1391(f)(1) applied to the property at issue in the underlying arbitration).

Plaintiff asserts that venue "is proper under 28 U.S.C. § 1391(f)(3) because Defendant PDVSA is an instrumentality of Venezuela that does business in Delaware through PDVH."  D.I. 1 at 2, ¶ 5.  This allegation acknowledges that PDVSA *itself* is not "doing business" in Delaware— all it is "doing" is owning shares of a corporation organized under the laws of the State of Delaware.  An entity is not "doing business" in a state if it "has no physical presence in [Delaware], and has no … operations in the state."  *Shirobokova v. CSA Czech Airlines, Inc.*, 335 F. Supp. 2d 989, 991 (D. Minn. 2004).  In other words, merely owning shares in a Delaware corporation is not "doing business" in Delaware.  *See Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 954 (1st Cir. 1984) ("'[D]oing business' as used in the federal venue statute requires some kind of localization of the corporation.");  *Vivadent (USA), Inc. v. Darby Dental Supply Co.*, 655 F. Supp. 1359, 1362 (D.N.J. 1987) ("[A] corporation will be held to be 'doing business' for

purposes of section 1391(c) if its activities within the district are such that its business has become localized and is in operation within the district so that some state *would probably* require the foreign corporation to be licensed as a condition precedent to doing that business.") (internal quotation marks omitted); *see* 8 Del. Code § 371(b) ("No foreign corporation shall do any business in this State, *through or by branch offices, agents or representatives located in this State*, until it shall have paid to the Secretary of State of this State for the use of this State, $80, and shall have filed in the office of the Secretary of State" specified certificates and statements) (emphasis added). In related contexts, it has long been held that a foreign parent corporation will not be required to register to do business in a state merely because its subsidiary is doing business in that state,[12] that merely owning the stock of a subsidiary organized under the laws of a particular state is not a basis for the state's assertion of jurisdiction over the parent corporation,[13] and that "[t]he fact that [a] company own[s] stock in the local subsidiary companies [does] not bring it into the State in the sense of transacting its own business there." *People's Tobacco Co. v. Am. Tobacco Co.*, 246 U.S. 79, 87 (1918).

In addition, as this Court has held, "[w]here there is more than one defendant, proper venue must be shown for each defendant." *Zazzali v. Swenson*, 852 F. Supp. 2d 438, 446 (D. Del. 2012) (Stark, J.) (internal quotation marks omitted). Even if venue were proper *as to PDVSA* (and it is not), subsection (f)(3) applies only to "an agency or instrumentality of a foreign state" and cannot

---

[12] *See, e.g., Washburn v. Sardi's Restaurants,* 191 Ga. App. 307, 307–08 (1989); *United Merchants and Manufacturers, Inc. v. David & Dash, Inc.,* 439 F. Supp. 1078, 1089 (D. Md. 1977); *Aro Manufacturing Co., Inc. v. Automobile Body Research Corp.,* 352 F.2d 400, 404 (1st Cir. 1965); *Compania Mexicana Refinadora Island S.A. v. Compania Metropolitana de Oleoductos, S.A.*, 164 N.E. 907, 910 (1928).

[13] *See, e.g., Cannon Mfg. Co. v. Cudahy Co.,* 267 U.S. 333, 335 (1925); *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 905 (1st Cir. 1980); *Calvert v. Huckins,* 875 F. Supp. 674, 678 (E.D. Cal. 1995); *Sears, Roebuck and Co. v. Sears PLC,* 752 F. Supp. 1223, 1225 (D. Del. 1990).

provide a basis for venue as to the Republic.  *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 152 (D.C. Cir. 1994) ("Section 1391(f) makes the federal district court for the District of Columbia the venue for civil actions against foreign states and their subdivisions; but it allows venue in suits against an agency or instrumentality of a foreign state 'in any judicial district in which the agency or instrumentality is licensed to do business or is doing business' … ." (quoting § 1391(f)(3))); *Havensight Capital LLC v. People's Republic of China*, No. 15-cv-1206, 2015 WL 12778414, at *1 (C.D. Cal. Apr. 30, 2015) ("The rule in § 1391(f) clearly distinguishes between states and their agents.").  *But see Altmann v. Republic of Austria*, 317 F.3d 954, 972 (9th Cir. 2002), *opinion amended on denial of reh'g*, 327 F.3d 1246 (9th Cir. 2003), *aff'd on other grounds*, 541 U.S. 677 (2004).

Plaintiff alleges that PDVSA is an alter ego of the Republic, D.I. 1 at 1, ¶ 3, but if that were true—and it is not—that status would render § 1391(f)(3) inapplicable.  *See Corporacion Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploracion y Produccion*, 832 F.3d 92, 117 (2d Cir. 2016) (Winter, J., concurring) ("[I]f [defendant] w[ere] so intertwined with the State of Mexico as to be deemed the state itself, Section 1391(f)(3) would be inapplicable.").

Finally, Plaintiff asserts that "[v]enue is also proper under 28 U.S.C. § 1738 because the final judgment of a court of general jurisdiction of one of the several States is entitled to 'full faith and credit' in 'every court within the United States,' while 22 U.C.S. [*sic*] § 1650(a) requires that an ICSID award must be 'given the same full faith and credit' as 'a final judgment of a court of general jurisdiction of one of the several States.'"  D.I. 1, at 2, ¶ 5.  But neither 28 U.S.C. § 1738 nor 22 U.S.C. § 1650(a) say anything about venue.  And, even if those statutes *were* venue statutes, they would not trump the exclusive venue provisions of the FSIA.  *See Mobil Cerro Negro*, 863 F.3d at 124–25; *Micula*, 714 F. App'x at 21 ("[T]he FSIA provides the exclusive mechanism for

enforcement of ICSID awards against foreign sovereigns in federal court … .").  "[W]hen the ICSID award-debtor is a foreign sovereign, the FSIA's procedural mandates control, including [that] … venue be proper under § 1391(f)."  *Mobil Cerro Negro*, 863 F.3d at 124.

Because none "of the events or omissions giving rise to the claim occurred" in Delaware and none of the "property that is the subject of the action is situated" in Delaware, 28 U.S.C. § 1391(f)(1), venue is proper only in the District of Columbia, *see id.* § 1391(f)(4).  The Court should dismiss the complaint without prejudice or, in the alternative, transfer the case to the United States Court for the District of Columbia under 28 U.S.C. §§ 1404(a) and 1406(a).

## II.   NO DEFAULT JUDGMENT SHOULD BE ENTERED BECAUSE PLAINTIFF HAS FAILED TO EFFECT SERVICE AND OBTAIN PERSONAL JURISDICTION.

"A default judgment entered when there has been no proper service of the complaint is … void, and should be set aside."  *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985).  Here, personal jurisdiction over the Republic is absent because process was never served in compliance with 28 U.S.C. § 1608(a).

In order to exercise personal jurisdiction over a foreign sovereign, the Court must have subject-matter jurisdiction over the claim and service must have been validly effected, in compliance with the FSIA.  28 U.S.C. § 1330(b) provides,

> Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) *where service has been made under section 1608 of this title*.  (Emphasis added.)

In other words, personal jurisdiction exists only when one of the exceptions to foreign sovereign immunity in 28 U.S.C. §§ 1605–1607 applies, *and* only if plaintiff has properly served the foreign sovereign under 28 U.S.C. § 1608.  *See Amerada Hess*, 488 U.S. at 435 n.3; *see also Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002).

As against the Republic, Plaintiff's claim appears (in part) to come within one of the exceptions to sovereign immunity, as the FSIA permits an action "to confirm an award made pursuant to … an agreement to arbitrate."[14]  28 U.S.C. § 1605(a)(6).  However, Plaintiff has failed to effect service on the Republic, which deprives this Court of personal jurisdiction over the Republic at this time.  The FSIA's service requirement, 28 U.S.C. § 1608, must be satisfied before a court may enter judgment on an ICSID award.  *See* 28 U.S.C. § 1330(b); *Mobil Cerro Negro*, 863 F.3d at 112.  Because the FSIA's service provisions "apply to a category of cases with sensitive diplomatic implications," when it comes to service on a foreign sovereign, "the rule of law demands adherence to [the FSIA's] strict requirements."  *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1062 (2019).  "[A] court cannot excuse noncompliance."  *Kumar v. Republic of Sudan*, 880 F.3d 144, 154 (4th Cir. 2018).

Plaintiff claims that it served the Republic under § 1608(a)(2).  *See* D.I. 11 at 11–12.  That provision allows service "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents"—in this case, the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 658 U.N.T.S. 163 (the "Hague Convention").  As described below, Plaintiff has not met and cannot meet the requirements for Hague Convention service at this time.

---

[14]     Plaintiff here seeks "registration" and "enforcement" of the ICSID award it obtained against the Republic.  D.I. 1 at 8–9.  While these claims are vague, the district courts of the United States have subject matter jurisdiction in an "action … to confirm an award made pursuant to … an agreement to arbitrate."  28 U.S.C. § 1605(a)(6).  The Republic reserves all defenses to any attempt to execute on a judgment, *see*, *e.g.*, *id.* §§ 1609, 1610(c), and all applicable defenses to the extent that Plaintiff seeks to avoid the strict requirements of the FSIA and other protections afforded foreign sovereigns.  *See Mobil Cerro Negro*, 863 F.3d at 124–25.  The law does not allow short-cuts.

A. **Hague Convention service through a "Central Authority."**

The Hague Convention provides for several methods of service, one of which is service through a contracting state's designated "Central Authority." *See* Hague Convention arts. 2–6. Under that method, "the authority or judicial officer competent under the law of the State in which the documents originate" sends a "request" for service, together with the document to be served, to the Central Authority of the State where process is to be served. *Id.* art 3. The Central Authority, after determining whether the request complies with the provisions of the Convention, *id.* art 4, either objects to the request for service, *see id.*, serves the document itself, or arranges for the document to be served by an appropriate agency, *id.* art. 5. In addition, a signatory to the Hague Convention "may refuse to comply" if "compliance would infringe its sovereignty or security," and, "in case of refusal, promptly inform the applicant and state the reasons for the refusal." *Id.* art. 13. Upon refusal or service, the Central Authority must revert to the applicant. *Id.* arts. 4, 6, 13.

B. **Plaintiff's efforts do not constitute complete service under the Hague Convention.**

Consistent with the Convention's terms, Plaintiff styled its transmissions to the Foreign Ministry as "*Requests* for Service of Process," and asked for the Foreign Ministry's "cooperation in this regard." *See* D.I. 9, Ex. 2, at 2; D.I. 9, Ex. 3, at 2. In particular, Plaintiff states that, on December 14, 2018, it sent its Requests for Service—along with copies of the summons and complaint—to Venezuela's designated Central Authority, the Ministerio del Poder Popular Para Relaciones Exteriores ("Foreign Ministry"). D.I. 11 at 7–8; D.I. 9, Exs. 2, 3.[15] Plaintiff further states that these Requests for Service were delivered by courier on December 21, 2018, and

---

[15]     Under U.S. law, U.S. lawyers may effect service. *See* Fed. R. Civ. P. 4(c)(2).

December 27, 2018, and signed for by two individuals whose affiliation is not described.  D.I. 11 at 7 (citing D.I. 9, Exs. 4, 5).  Plaintiff concedes that it has not received a certificate from the Central Authority confirming that service was perfected.  *Id.* at 12 n.4.  Accordingly, the Republic has not been served properly and "in accordance with an applicable international convention" pursuant to 28 U.S.C. § 1608(a)(2).

Plaintiff argues that "[i]n these circumstances, delivery to and acceptance by the Venezuelan Foreign Ministry completed service of the complaint … ."  D.I. 11 at 11; *see also id.* at 7–8.  But under the Convention, the Central Authority is not an *agent* for receiving service on behalf of a signatory state.  Instead, it is simply the entity designated to "*process*" all "*requests* for service."  Ved P. Nanda et al., Litigation of International Disputes in U.S. Courts § 2:4 (March 2019) (emphasis added).

Other courts have held that a "request for service" of process on a foreign sovereign under the Convention does not itself constitute service of process on that sovereign.  *See, e.g.*, *Cavic v. Republic of Serbia*, 2018 WL 6038346, at *3 (C.D. Cal. Mar. 21, 2018) ("[T]he arrival of [Plaintiff's] request for service at the [Serbian] Ministry of Justice … does not constitute service on Serbia itself.  The arrival of the papers at the Ministry of Justice is a 'request for service;' service must then be effectuated by the Ministry upon the parties within Serbia."); *Marschauser v. Travelers Indem. Co.*, 145 F.R.D. 605, 609–10 (S.D. Fla. 1992) (similar).

The sole case that Plaintiff cites to the contrary, *Devengoechea v. Bolivarian Republic of Venezuela*, 2014 WL 12489848 (S.D. Fla. Apr. 25, 2014), is different.  The court in *Devengoechea* "specially appointed and authorized" a process server to serve the Republic, and the plaintiff later "filed proof of service of process on [the Republic] through" the process server's affidavit.  *Id.* at *1.  Nothing of that nature has occurred here.

Plaintiff also argues that the lack of proof of service here in the form of a certificate issued by the Central Authority is immaterial, because "otherwise, sovereign defendants could evade service under the Hague Service Convention by the simple expedient of declining to certify that they had formally served themselves." D.I. 11 at 12 n.4. But the Hague Convention itself guards against this contingency, not by creating a "sovereign defendant" exception to the service requirement, but rather by permitting domestic courts to enter judgment "even if no certificate of service or delivery has been received," provided that (1) "the document was transmitted by one of the methods provided for in this Convention," (2) "a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document," and (3) "no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed." Hague Convention art. 15. The Hague Convention's drafters specifically intended for *Article 15* to be a "sanction against those who ignore" the Convention. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). The Court should not permit Plaintiff to circumvent the requirements of the Hague Convention when the Convention itself already contains adequate safeguards against potential noncompliance.

As the Republic explains below, Plaintiff has not satisfied the requirements for entry of default judgment under Article 15.

### C.     Article 15 of the Hague Convention precludes entry of default judgment.

Article 15 provides that a default judgment "shall not be given until it is established that" service was effected. As noted above, Article 15 allows for exceptions to this rule and provides that "the judge … may give judgment even if no certificate of service or delivery has been received," if the plaintiff (1) transmitted the documents by a method set forth in the Convention, (2) a period of at least six months, "considered adequate by the judge in the particular case," has

elapsed since the plaintiff transmitted the documents, and (3) the plaintiff has made "every reasonable effort" to obtain the certificate from the relevant authorities.  Those requirements are not met here, and the motion for default judgment should therefore be denied.  *Mezerhane v. República Bolivariana De Venezuela*, 2013 WL 12091160, at *3 (S.D. Fla. Mar. 19, 2013) ("Default judgment [against the Republic] is not appropriate here because Plaintiff has not met every element for entry of such under Article 15 … .").

First, the Court should not consider the time that has elapsed since Plaintiff transmitted the documents to be "adequate" for purposes of entering a default judgment.  *See*, *e.g.*, *id.* (holding that the Republic's delay of over a year in issuing a certificate of service was not "adequate" for purposes of Article 15).  Plaintiff allegedly transmitted the documents in late December 2018.

As noted above, since January 10, 2019, National Assembly President Juan Guaidó has served as interim President of Venezuela, and has been recognized as such by the United States since January 23, 2019.  Mr. Maduro's refusal to cede control of interior agencies like the Ministry of Foreign Affairs has compounded a complex political and humanitarian crisis in Venezuela.  Mr. Maduro has refused to permit humanitarian assistance to enter the country, and the Republic has been wracked by blackouts, hyperinflation, and shortages of food and medicine.  Given that, even during times of normalcy, "service outside the United States is a time-consuming process because of the rate at which papers are processed by foreign governments," *id.* (internal quotation marks omitted), this Court should not deem the seven months that have elapsed since transmission of the documents to be sufficiently "adequate" here for purposes of Article 15.

The confrontation between the National Assembly and Mr. Maduro compounds this problem.  The Guaidó government presently cannot access executive-branch resources located in Venezuela because of the continued domination of these agencies by the Maduro regime, which

has refused to relinquish power and continues to block access by the National Assembly to key Venezuelan governmental institutions.  The Maduro regime's continued presence also prevents the Guaidó government from accessing the financial resources that are necessary for the Republic to begin to address the hundreds of billions of dollars in claims against it and makes impossible the implementation of the broad economic reforms that are necessary to reverse the complex humanitarian emergency and promote the economic recovery of the country.

Further, even if the Maduro-controlled Ministry of Foreign Affairs were to return a certification of service, this Court could not recognize it without running afoul of the principle that, in the relations of the United States with foreign nations, the President holds the exclusive power to recognize a foreign government.  *See Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2087 (2015); *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 319–20 (1978); *Guaranty Trust Co. v. United States*, 304 U.S. 126, 138 (1938); *Jiménez*, slip op. at 24–25.  As the Supreme Court has repeatedly cautioned, U.S. courts must avoid actions that could expose the Executive Branch to embarrassment in its relationship with foreign nations.  *See United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320–22 (1936); *Mackenzie v. Hare*, 239 U.S. 299, 311 (1915); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004); *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116–117 (2013).  Judicial recognition of any act taken by the Maduro-controlled foreign ministry would be an implicit recognition of Mr. Maduro—and a grave affront to the Republic.[16]

In addition, even if the Central Authority were controlled by the recognized government of Venezuela (and at this time it is not), Plaintiff has not made adequate efforts to obtain a certificate.

---

[16]    In view of this situation, the Republic deems Hague service unavailable at this time to U.S. litigants, and similarly deems 28 U.S.C. § 1608(a)(3) (allowing service to be "dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned"), unavailable at this time to U.S. litigants.  Service may be available under subsection 1608(a)(1) or, in the absence of an appropriate arrangement, subsection 1608(a)(4).

In *Aly v. Hanzada for Imp. & Exp. Co.*, 2014 WL 2829513 (W.D. Mo. June 23, 2014), by contrast, the plaintiff petitioned the Central Authority, sought assistance from the U.S. Embassy, and flew to the foreign country to meet with the government. The court held that "[c]ollectively, these actions are 'every reasonable effort.'" *Id.* at *5 (citation omitted). Similarly, in *Coombs v. Iorio*, 2008 WL 4104529 (E.D. Okla. Aug. 28, 2008), the plaintiff made "repeated attempts to obtain the proper certificates of service from the Kuwaiti Ministry of Justice." *Id.* at *3. Here, Plaintiff would have to show that, upon assumption of control of the Central Authority by the recognized government of the Republic, it made reasonable efforts to obtain a certificate of service. It has not yet done so. Plaintiff has not satisfied Article 15's requirements for entry of default judgment in the absence of a certificate.

*   *   *

Because service has not been effected, default judgment may not be entered.

### III.     THE CLERK'S ENTRY OF DEFAULT SHOULD BE VACATED.

Entries of default are generally disfavored, because they prevent claims from being decided on the merits. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir. 1984). The Third Circuit has long held that "[a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits." *Tozer v. Charles A. Krause Mill. Co.*, 189 F.2d 242, 245 (3d Cir. 1951); *see also, e.g.*, *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982). That is particularly so in cases involving foreign sovereigns. "Intolerant adherence to default judgments against foreign states could adversely affect this nation's relations with other nations and undermine the State Department's continuing efforts to encourage foreign sovereigns generally to resolve disputes within the United States' legal framework." *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 447 F.3d 835, 838–39 (D.C. Cir. 2006) (internal quotation marks omitted).

Federal Rule of Civil Procedure 55(c) provides that the Court may set aside a default for "good cause." Good cause exists here. The entry of default was premature because the court has not obtained jurisdiction over the Republic. In addition, in deciding whether to set aside a default, courts in this Circuit consider "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *Gold Kist, Inc.*, 756 F.2d at 19. All of these factors favor setting aside the entry of default here.

### A.      Plaintiff will not be prejudiced.

Plaintiff will suffer no prejudice if the default is vacated. Plaintiff cannot show that, during the time in which the Republic originally failed to answer, there was any "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment," as the Third Circuit would require to establish prejudice. *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982).

Plaintiff may argue that vacatur will delay its ability to execute the arbitral award. But "[d]elay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment entered at an early stage of the proceeding." *Id.* at 656–57. The Republic moved promptly after the clerk's entry of default and intends to participate actively in this matter. *See Dambach v. United States*, 211 F. App'x 105, 109 (3d Cir. 2006) (no prejudice where defendants moved to vacate default shortly after entry). This factor favors setting aside the default.

### B.      The Republic has meritorious defenses.

The default should also be vacated because the Republic has meritorious defenses. "The showing of a meritorious defense is accomplished when allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." *U.S. Currency*, 728 F.2d

at 195 (internal quotation marks omitted).  As explained above, *supra* pp. 6–14, this Court is an improper venue for this action and lacks personal jurisdiction over the Republic because Plaintiff has not validly served the Republic.  Either of these defenses on its own is a complete defense to this action and weighs in favor of setting aside the default.

Further, to the extent that Plaintiff is attempting to use this action to obtain a judgment affecting property of the Republic, such property is immune.  28 U.S.C. § 1609.

### C.     The Republic's default was not the result of culpable conduct.

Finally, the Republic's failure to respond timely to Plaintiff's complaint was not culpable.  Conduct is considered culpable if it is "willful[] or in bad faith," Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 123–24 (1983), or if it is part of a "deliberate trial strategy," Dambach, 211 F. App'x at 109–10.

That is not the case here.  Even apart from the fact that the Republic has not been served and therefore had no obligation to appear, supra pp. 10–14, Venezuela has been in a state of serious political turmoil throughout the pendency of this action, and is facing a grave economic and social crisis that has plunged the country into a state of humanitarian emergency, supra pp. 2–4.  Any delay was not the result of bad faith or a calculated tactic to obstruct proceedings in this matter; it was the unfortunate consequence of the confusion and disarray that have roiled the Republic.  This factor, too, weighs in favor of vacating the default.

### CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for default judgment, vacate the clerk's default, and either dismiss the complaint without prejudice or transfer the case to the United States District Court for the District of Columbia.

/s/ A. Thompson Bayliss

Of Counsel:

A. Thompson Bayliss (#4379)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com

Kent A. Yalowitz*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
T: (212) 836-8000
F: (212) 836-8689
Kent.yalowitz@arnoldporter.com

*Counsel for the Bolivarian Republic of Venezuela*

E. Whitney Debevoise*
Sally L. Pei*
Stephen K. Wirth*
Avishai D. Don*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999
Whitney.debevoise@arnoldporter.com
Sally.pei@arnoldporter.com
Stephen.wirth@arnoldporter.com
Avishai.don@arnoldporter.com

*motions for pro hac vice admission pending

Dated:  August 7, 2019